IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-00880-KLM

RONALD JENNINGS FOGLE,

      Plaintiff,

v.

JOHN PALOMINO, individually and in his official capacity as former CCF Investigator,

      Defendant.

_____

## ORDER

_____

## ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX

This matter is before the Court on Plaintiff's **Motion for Summary Judgment Against: Defendant John Palomino** [#59];[1] and on Defendant's **Motion for Summary Judgment** [#63].  The parties filed Responses [#62, #66] and Replies [#65, #69].[2]  The Court has reviewed the Motions, Responses, Replies, the entire case file, and the applicable law, and is sufficiently advised in the premises.  For the reasons set forth below, Plaintiff's Motion [#59] is **DENIED**, and Defendant's Motion [#63] is **GRANTED**.

---

[1]  "[#59]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  This convention is used throughout this Order.

[2]  Plaintiff proceeds in this matter as a pro se litigant.  The Court must construe the filings of a pro se litigant liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his] behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).  In addition, pro se litigants must follow the same procedural rules that govern other litigants.  *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

## I.  Summary of the Case[3]

Plaintiff is an inmate of the Colorado Department of Corrections ("CDOC") who is presently housed at the Crowley County Correctional Facility ("CCCF") and was housed there during the events which gave rise to this lawsuit.  *Motion* [#63] ¶ 1; *Response* [#66] ¶ 4.  Defendant was employed as CCCF's investigator.  *Motion* [#63] ¶ 6; *Response* [#66 ¶ 9.  In September of 2012, Plaintiff was employed as a clerk in the CCCF law library, where his staff supervisor was Leslie Terrones ("Mrs. Terrones").  *Motion* [#63] ¶ 2; *Response* [#66] ¶ 5.  On September 2, 2012, Plaintiff wrote a letter to David Rohde ("Rohde") (a former inmate of CCCF who was incarcerated at another facility), which included a number of complaints about Mrs. Terrones.  *Motion* [#63] ¶ 3; *Response* [#66] ¶ 6; *Defs.' Ex. 1* [#63-1]; *Response* [#62] ¶ 17.  For example, Plaintiff wrote that Mrs. Terrones had "become a super police woman," that her sons, who were also convicts,

---

[3] Because this Order considers cross-motions for summary judgment, the recitation of the case includes only undisputed facts.  To the extent necessary, the Analysis section below discusses disputed facts and construes the evidence in a light most favorable to the nonmovant. *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1186 (10th Cir. 2015) ("We . . . recit[e] all summary-judgment evidence in the light most favorable to . . . the nonmovant."). Pursuant to 28 U.S.C. § 1746, Plaintiff swears to his Amended Complaint [#44], Motion [#59], Response [#66], and Reply [#65] under penalty of perjury, and thus these documents may be treated as affidavits and used as evidence on summary judgment. *See Pacheco v. Timme*, No. 11-cv-02530-RM-KLM, 2014 WL 2442111, at *4 n.2 (D. Colo. May 30, 2014).  However, Plaintiff must still provide more than conclusory or vague statements in order to create a genuine issue of material fact with respect to Defendant's otherwise undisputed facts.  *See Ford v. West*, 222 F.3d 767, 777 (10th Cir. 2000) ("Vague, conclusory statements do not suffice to create a genuine issue of material fact."); *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988) (stating that "mere conjecture" is an insufficient basis for denial of summary judgment).  The Court therefore does not include such statements in this recitation of facts, even if Plaintiff "disagrees" with Defendant's facts, unless Plaintiff directs the Court's attention to evidence in the record which otherwise supports his "disagreements."  The Court also disregards hearsay statements to which Defendant has objected. *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1314 (10th Cir. 2005) (citation omitted) (holding that hearsay evidence is not acceptable in opposing a summary judgment motion); *World of Sleep, Inc. v. La–Z–Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).  Finally, the Court also notes that it disregards all statements consisting of legal conclusions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *see, e.g., Motion* [#59] ¶ 3.  Where the facts are otherwise undisputed, the Court refers only to the parties' briefing demonstrating that they are uncontested.

would be "sick to there [sic] stomachs to see their mother here at work," that "[s]he polices everything," that she was "a control freak," that she could not be trusted, that she would "ratt [sic] you out," that she had gone "off the deep end," and that nobody trusted her, "not even staff, especially not staff." *Motion* [#63] ¶ 4; *Response* [#66] ¶ 7; *Defs.' Ex. 1* [#63-1]. This letter was addressed to Mr. Rohde's daughter, apparently for forwarding to Mr. Rohde, and mailed out of CCCF, but it was returned with a hand-written notation stating "wrong address doesn't live here." *Motion* [#63] ¶ 5; *Response* [#66] ¶ 8; *Reply* [#69] ¶ 5; *Defs.' Ex. 2* [#63-2].

CCCF staff read the letter when it was returned, and Plaintiff was thereafter removed from general population. *Motion* [#63] ¶ 6; *Response* [#66] ¶ 9; *Reply* [#69] ¶ 6; *Motion* [#59] ¶¶ 4, 15; *Response* [#62] ¶ 2, 17. Although Plaintiff's removal was not mandatory under prison rules and regulations, any investigation involving the interactions between an inmate and a staff member which may present a potential safety or security threat may warrant removal from population during a subsequent investigation, according to prison policy. *Id.*; *Pl.'s Ex. C* [#59] at 15. Plaintiff was not given prior notice of his removal or the opportunity to call witnesses or provide evidence at a hearing. *Motion* [#59] ¶ 13; *Response* [#62] ¶ 13. Defendant thereafter conducted an investigation into the letter and a separate complaint from an administrative clerk asserting that Plaintiff had approached her and advised her that he liked large women. *Motion* [#63] ¶ 6; *Response* [#66] ¶ 9; *Reply* [#69] ¶ 6; *Motion* [#59] ¶ 1; *Response* [#62] ¶ 1. The letter had been written approximately twelve days before Plaintiff's removal from general population, and the comment about large women had been made approximately two months before Plaintiff's removal, although it had been addressed at least once already by Assistant

Warden Rodger Wilson.  *Response* [#66] ¶ 9.

From approximately September 14, 2012, through approximately September 27 or 28, 2012, Plaintiff remained in segregation.[4]  *Motion* [#63] ¶ 7; *Response* [#66] ¶ 10; *Reply* [#69] ¶ 7.  These dates coincided with the period of Defendant's investigation.  *Id.* Defendant did not question Plaintiff about the letter at any time during the investigation. *Motion* [#59] ¶ 16.  On the first day Plaintiff was in segregation, he wrote an incident statement in which he acknowledged that he was being investigated for the letter he wrote to Mr. Rohde, and in which he attempted to explain his motivation in writing the letter. *Motion* [#63] ¶ 8; *Response* [#66] ¶ 11; *Reply* [#69] ¶ 8.  Warden Michael Miller ("Miller") told Plaintiff that he was placed in segregation for "talking bad about one of [his] staff." *Motion* [#63] ¶ 9; *Response* [#66] ¶ 12; *Reply* [#69] ¶ 8.  Segregation case manager Rachel Infante also told Plaintiff that he was in segregation for talking bad about one of Warden Miller's staff in a letter.  *Motion* [#63] ¶ 10; *Response* [#66] ¶ 13.  Defendant's investigation concluded that Plaintiff did not violate CDOC's Code of Penal Discipline, and thus Plaintiff was not charged with a disciplinary offense and was returned to general population at the conclusion of the investigation.  *Motion* [#63] ¶ 11; *Response* [#66] ¶ 14; *Reply* [#69] ¶ 11; *Response* [#62] ¶ 2.

While Plaintiff was in segregation, Mrs. Terrones hired two inmates to cover the law clerk duties previously performed by Plaintiff, and CCCF now has three full time inmate law clerks.  *Motion* [#63] ¶ 12; *Response* [#66] ¶ 15; *Reply* [#69] ¶ 12.  Upon Plaintiff's release from segregation, Defendant informed Plaintiff that he would be returned to

---

[4]  The exact date of Plaintiff's release from segregation is immaterial to the Court's analysis below.

general population.  *Motion* [#63] ¶ 13; *Response* [#66] ¶ 16; *Reply* [#69] ¶ 13.  Plaintiff

asked Defendant if his jobs, programs, and privileges would be restored, and Defendant

only responded that he should stay away from Mrs. Terrones, although Defendant had

nothing to do with the decision not to return Plaintiff to his law library job.  *Motion* [#63] ¶

13; *Response* [#66] ¶ 16; *Reply* [#69] ¶ 13; *Response* [#62] ¶ 5; *Pls.' Ex. C* [#59] at 17.

Plaintiff was thereafter assigned to a four-man cell, although he had been assigned to a

two-man cell before the investigation.  *Motion* [#63] ¶ 14; *Response* [#66] ¶ 17.  Plaintiff

was later returned to the same two-man cell he had previously occupied.  *Motion* [#63]

¶ 18; *Response* [#66] ¶ 15.

The only privileges Plaintiff did not recover following his release from segregation

were those privileges associated with his job as a law clerk, which included free copies

and additional hours in the library.[5]  *Motion* [#63] ¶ 16; *Response* [#66] ¶ 19; *Reply* [#69]

¶ 16.  Upon his release from segregation, Plaintiff was assigned to be a custodian in the

Unit 4 living area.  *Motion* [#63] ¶ 17; *Response* [#66] ¶ 20.  Plaintiff also continued to

pursue an apprenticeship he began prior to segregation as an Office

Manager/Administration Services provider through the United States Department of

Labor.  *Motion* [#63] ¶ 21; *Response* [#66] ¶ 21.

Plaintiff was awarded earned time for the entire time he was in segregation,

although earned time is not available to inmates in punitive segregation as a result of

disciplinary offenses.  *Motion* [#63] ¶ 21; *Response* [#66] ¶ 24.  Defendant did not have

---

[5] Defendant provides evidence, and Plaintiff does not dispute, that Plaintiff was not barred from any other privileges following his return to general population.  For example, Plaintiff completed a Life Skills Transition Program, obtained a certificate in Business and Corporate Law from Blackstone Career Institute, completed an Addiction Recovery Program, and enrolled in Adams State University's Paralegal Certificate Program.  *Motion* [#63] ¶ 19; *Response* [#66] ¶ 22.

any control over the conditions of confinement in segregation, and he did not ask that any special conditions be applied to Plaintiff in September of 2012. *Motion* [#63] ¶ 22; *Response* [#66] ¶ 25; *Reply* [#69] ¶ 22. For example, Defendant did not deny Plaintiff access to legal materials or outdoor recreation while he was in segregation. *Motion* [#63] ¶ 23; *Response* [#66] ¶ 26; *Reply* [#69] ¶ 23. Defendant did not have any control over the programs, privileges, or job assignments at CCCF and did not issue any order regarding Plaintiff's programs, privileges, or jobs following his release from segregation. *Motion* [#63] ¶ 24; *Response* [#66] ¶ 27; *Reply* [#69] ¶ 24.

The following claims were made in this action: (1) two claims regarding denial of procedural due process in violation of the Fourteenth Amendment; (2) three claims regarding retaliation in violation of the First Amendment; (3) one claim regarding denial of equal protection in violation of the Fourteenth Amendment; and (4) one claim regarding cruel and unusual punishment in violation of the Eighth Amendment.

## II.  Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of

persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 477 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999), abrogation recognized by *Eisenhour v. Weber Cnty.*, 744 F.3d 1220, 1227 (10th Cir. 2014). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed. 1998).

Only documents that meet the evidentiary requirements of Fed. R. Civ. P. 56 may be considered for purposes of summary judgment. Rule 56(c) provides that:

> (1) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]
>> ...
> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is

competent to testify on the matters stated.

Fed. R. Civ. P. 56(c)(1)-(4).

### III.  Analysis

### A.    Plaintiff's Motion for Summary Judgment

Plaintiff's Motion [#59] appears to be a partial motion for summary judgment because it only addresses the portion of Claim Four which asserts a First Amendment retaliation claim in connection with his letter to an inmate at another facility.[6]

Inmates are "not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because [they] engage[ ] in protected activity." *Suarez v. Palomino*, 590 F. App'x 733, 736 (10th Cir. 2014) (quoting *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)).  To state a First Amendment retaliation claim, Plaintiff "must provide facts indicating that: (1) he engaged in constitutionally protected activity; (2) the defendant['s] actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) the defendant['s] actions were substantially motivated by [Plaintiff's] protected activity." *Magluta v. U.S. Fed. Bureau of Prisons*, No. 08-cv-00404, 2009 WL 1504749, at *3 (D. Colo. May 27, 2009) (addressing First Amendment retaliation claim) (citing *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007)).  In connection with the third element, Plaintiff must demonstrate "that retaliation was the animus behind [Defendant's] actions,

---

[6] In the Reply [#65], Plaintiff attempts to expand the scope of his Motion [#59] far beyond the arguments initially presented.  However, the Court restricts its analysis to those issues raised in the Motion [#59].  *See* D.C.COLO.LCivR 7.1(d) ("A motion shall not be included in a response or reply to the original motion.  A motion shall be filed as a separate document."); *United States v. Mora*, 293 F.3d 1213, 1216 (10th Cir. 2002) (stating that "we [do not] consider arguments raised for the first time in a reply brief").

i.e., [Plaintiff] must show that 'but for' a desire to retaliate, [Defendant] would not have acted as [he] did." *Magluta*, 2009 WL 1504749, at *3 (citations omitted). "An inmate claiming retaliation must [provide] specific facts showing retaliation because of the exercise of [his] constitutional rights." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (internal quotation marks and citation omitted).

The portion of Claim Four which asserts retaliation relating to the letter fails on the first element. Protected activity includes the filing of administrative grievances. *Smith v. Nelson*, __ F. App'x __, __, 2015 WL 4399618, at *2 (10th Cir. July 20, 2015) (citing *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991)). Protected activity includes accessing the courts. *Vreeland v. Schwartz*, __ F. App'x __, __, 2015 WL 3372139, at *4 (10th Cir. May 26, 2015) (citing *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010)). *Cf. Crosby v. Heil*, 499 F. App'x 764, 767 (10th Cir. 2012) (stating that giving legal advice to fellow inmates is not a constitutionally protected activity) (citing *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)). Plaintiff has provided no legal support, and the Court has found none, which holds that writing a letter to another incarcerated individual complaining about a prison staff member is activity protected by the First Amendment. *See, e.g.*, *Owen v. Medina*, No. 12-cv-00094-WJM-CBS, 2012 WL 7800837, at *7 (D. Colo. Dec. 18, 2012) (holding that inmate's refusal to volunteer for incentive unit and subsequent comments about the unit were not protected conduct) (citing *Lewis v. Randle*, No. 02-4297, 66 F. App'x 560, 562 (6th Cir. May 23, 2003) (noting that prisoner's letter of complaint to warden "arguably was not constitutionally protected")); *Wilson v. Budgeon*, No. 3:05-2101, 2007 WL 464700, at *6 (M.D. Pa. Feb. 13, 2007) (holding that inmate's argument with prison official was not protected conduct).

-9-

To the contrary, the United States Supreme Court has found that, while a prisoner's right to correspond with people outside the prison is constitutionally protected, *see Tyler v. Sullivan*, 83 F.3d 433 (Table) (10th Cir. Apr. 22, 1996) (citing *Turner v. Safley*, 482 U.S. 78, 84 (1987), a general prohibition on inmate-to-inmate correspondence between inmates at different institutions "does not constitutionally abridge the First Amendment rights of prison inmates." *Lewis v. Clark*, 577 F. App'x 786, 802 n.14 (10th Cir. 2014) (quoting *Turner v. Safley*, 482 U.S. 78, 93 (1987)).[7]  Here, Mr. Rohde was formerly an inmate at CCCF who had been transferred to another prison facility. *Motion* [#63] ¶ 3; *Response* [#66] ¶ 6.  Moreover, Plaintiff was not prevented from sending correspondence to him.[8]  There is no evidence that his letter was censored or that he was not permitted to correct the address and send the letter a second time.

Rather, Defendant undertook a lesser action by instigating an investigation to determine whether there was a potential safety or security threat to a staff member based on the language in the letter. *Response* [#62] ¶ 17; *Pl.'s Ex. C* [#59] at 15.  Prison officials have the right to intercept and examine prisoners' incoming mail.  *See Kennedy v. Corr. Corp. of Am.*, No. 11-cv-02663-REB-MEH, 2012 WL 5878159, at *3 (D. Colo. Nov. 20, 2012).  Although the letter did not explicitly threaten Mrs. Terrones, a threat need not be explicit to warrant investigation and potential disciplinary action.  *See Bornman v. Berkebile*, No. 14-cv-01997-MJW, 2014 WL 5396169, at *3 (D. Colo. Oct. 23, 2014) (citing

---

[7]  *Lewis v. Clark* notes that this holding might not apply to inmates in familial relationships, but there is no evidence in this case that Plaintiff is related to Mr. Rohde.  577 F. App'x at 802 n.14.

[8]  Defendant concedes that it was only after this incident that CDOC implemented a regulation prohibiting correspondence between inmates who are not immediate family members. *Response* [#62] at 8.

*Mabie v. Daniels*, No. 13-cv-01489-REB, 2014 WL 321358, at *4 (D. Colo. Jan. 29, 2014) ("Applicant wrote a letter to a staff member . . . stating '12–23–2014, we will find out if it was a good idea to threaten me,' (the date given is close to Applicant's release date), and then when interviewed by the investigating lieutenant stated 'What I do when I'm released is my business.'  Both of these statements provide some evidence that Applicant was threatening a staff member with bodily harm."); *Smith v. Cross*, 2:10CV35, 2010 WL 5525178, at *5 (N.D.W. Va. June 11, 2010) *report and recommendation adopted*, 2:10CV35, 2011 WL 39033 (N.D.W. Va. Jan. 5, 2011) ("[A]lthough the petitioner did not verbalize a threat to Wingo, his actions were an implied threat, and any reasonable person would have felt threatened by Wingo's description of his conduct.")).  In discussing inmate correspondence, the United States Supreme Court has noted that:

> [W]e have been sensitive to the delicate balance that prison administrators must strike between the order and security of the internal prison environment and the legitimate demands of those on the "outside" who seek to enter that environment, in person or through the written word. . . . [P]rison officials may well conclude that certain proposed interactions, though seemingly innocuous to laymen, have potentially significant implications for the order and security of the prison.  Acknowledging the expertise of these officials and that the judiciary is "ill equipped" to deal with the difficult and delicate problems of prison management, this Court has afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world.

*Thornburgh v. Abbott*, 499 U.S. 401, at 407-08 (1989).  Here, Plaintiff was investigated, but ultimately not disciplined, based on a potential safety concern stemming from statements undisputedly made by him.  The law both limits prisoners' rights to correspond with other prisoners and supports investigations by prison officials under these circumstances.  As a result, Plaintiff has failed to show that he engaged in protected

conduct.

Plaintiff has failed to show that he is entitled to judgment as a matter of law on whether his First Amendment rights were violated. Accordingly, the Court **denies** Plaintiff's Motion [#59] for entry of summary judgment on this issue.

**B.     Defendant's Motion for Summary Judgment**

**1.     First Amendment Claims**

Claims Two and Four are likewise First Amendment retaliation claims. Claim Two asserts that Plaintiff engaged in protected conduct when he asked to have a staff paralegal hired at the law library, and that Defendant retaliated against him by denying the request and thereby impeding his access to the courts. *Am. Compl.* [#44] ¶ 105. Claim Four asserts that Plaintiff engaged in protected conduct by asking to have a staff paralegal employed in the law library as well as by writing the letter to Mr. Rohde, and that Defendant retaliated against him by placing him in segregation.[9] *Id.* ¶ 134. Thus, in short, in connection with these two claims, Plaintiff appears to assert two types of protected conduct: (1) writing the letter and (2) requesting employment of a paralegal. He also appears to assert two types of retaliation: (1) placement in segregation, and (2) denial of access to the courts because of his lack of access to help from a staff paralegal.

Claim Three appears to assert a First Amendment retaliation claim related to Defendant's alleged denial of permission to Plaintiff to access his legal materials during

---

[9] Defendant appears to equate the first half of Plaintiff's Claim Four with Plaintiff's Claim Two. *See Motion* [#63] at 18 ("To the extent Plaintiff is alleging retaliation due to his purported request for a staff paralegal, such claim is redundant of his [Second] Claim and is addressed above . . . ."). However, while Plaintiff's claims are in part based on the same allegedly protected conduct, each claim appears to allege a somewhat different type of retaliation. The retaliation alleged in Claim Four is Plaintiff's placement in segregation. *See Am. Compl.* [#44] ¶ 136. The retaliation alleged in Claim Two is restriction of access to the courts. *See id.* ¶ 108.

the approximately two weeks when he was in segregation, thereby restricting Plaintiff's ability to access the courts.  *Id.* ¶ 122.  Plaintiff appears to imply that this action was retaliatory, but he does not explicitly say so as part of his claim, and it is unclear whether the alleged protected conduct underlying the claim is writing the letter or the paralegal request.  *See id.* ¶¶ 122-33.  However, as discussed below, the Court finds that Plaintiff did not suffer any actual injury here, i.e., he was not actually denied access to the Courts, and this claim therefore fails regardless of how it is construed.

### a.   The Letter Written to Mr. Rohde

Regarding the letter, Defendant is entitled to judgment as a matter of law regarding the first element of this First Amendment retaliation claim, i.e., whether Plaintiff engaged in protected conduct.  As discussed in connection with Plaintiff's Motion for Summary Judgment, legal authority does not support Plaintiff's argument that an incarcerated individual who writes a letter about a prison staff member to another incarcerated individual is engaging in conduct safeguarded by the First Amendment.  Because Plaintiff has failed to establish as a matter of law that the letter was protected conduct, this portion of Claim Four fails.

### b.   The Request to Hire a Library Staff Paralegal

Claims Two and Four both concern Plaintiff's request for a staff paralegal in CCCF's law library.   The alleged retaliation in Claim Four is based on Plaintiff's subsequent assignment to segregation and the resultant alleged restriction of Plaintiff's ability to access the court.  In essence, Plaintiff asserts two levels of retaliation based on the events alleged in the Amended Complaint: first, his placement in segregation, and second, denial of access to the courts.  As noted above, Plaintiff's Claim Two is closely

related to the second portion of Claim Four.  While both claims are premised initially on Plaintiff's request for a staff paralegal, Claim Two asserts that the failure of the law library to employ a staff paralegal impeded Plaintiff's ability to access the court and was thus retaliatory.

Although neither Plaintiff nor Defendant frames it as such, the Court finds that Plaintiff's request for a staff paralegal is properly construed as an oral grievance or complaint.  Such oral complaints may be protected speech.  *See, e.g.*, *Rogers v. Garcia*, No. 08-cv-02821-WYD-MJW, 2010 WL 3547432, at *6 n.3 (D. Colo. Sept. 3, 2010) (citing *Gomez v. Vernon*, 255 F.3d 1118, 1123 (9th Cir. 2001) (holding that an inmate who was a law clerk at a prison library stated a First Amendment claim in connection with his oral statements to officer about the management of the law library and the officer's subsequent threats to transfer him which caused him to quit the job)); *Allen v. Roady*, No. CIV-08-0485-F, 2009 WL 455440, at *7 n.28 (W.D. Okla. Feb. 23, 2009) ("Oral complaints to prison authorities could be protected under the First Amendment.") (citing *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) (holding that the First Amendment right to petition for redress of grievances provides constitutional protection for an inmate's complaints, regardless of whether they are expressed orally or in writing); *Watkins v. Kasper*, 560 F. Supp. 2d 691, 694 (N.D. Ind. 2008) ("Oral grievances [by prisoners] are protected the same as written grievances.")).

The Court also finds that Plaintiff meets the second element of a First Amendment retaliation claim, because placement in segregation is an adverse action.  *See Faircloth v. Schwartz*, No. 12-cv-02764-REB-KLM, 2014 WL 4466663, at *8 (D. Colo. Sept. 10, 2014) (citing *Quintana v. Edmond*, No. 06-cv-01187-WDM-KLM, 2008 WL 3539265, at

*11 (D. Colo. Aug. 12, 2008)).[10]

However, Plaintiff's claim fails on the third element of a retaliation claim. Assuming that Defendant was made aware of Plaintiff's request to hire a staff paralegal,[11] there is no evidence that Defendant's decision to place Plaintiff in segregation was *substantially* motivated by Plaintiff's request. *See Magluta*, 2009 WL 1504749, at *3 (stating that the plaintiff must demonstrate that the defendant's actions were substantially motivated by the plaintiff's protected activity). The only evidence regarding Defendant's response to the paralegal request is Mrs. Terrones' alleged statement that Defendant stated that he had not heard any complaints from the other inmates. *Am. Compl.* [#44] ¶ 32. Plaintiff asserts that Mrs. Terrones also broadly told him that she had spoken with five separate prison administrators (including Defendant), that she got the impression they were upset by the request, and that they thought Plaintiff was creating problems for them by costing them money. *Am. Compl.* [#44] ¶¶ 32-35. However, these vague (likely hearsay) statements do not demonstrate an animus by Defendant personally, especially because the only specific statement attributed to Defendant does not implicate money concerns, the apparent reason given for the upset reaction by the other administrators. *See, e.g.*, *Am. Compl.* ¶ 32 (stating that Warden Michael Miller said that there was a hiring freeze and that he could not pay Plaintiff paralegal wages).

Plaintiff must demonstrate "that retaliation was the animus behind [Defendant's]

---

[10] Defendant's argument that an inmate should reasonably anticipate segregation at some point during his confinement, *see Response* [#63] at 12, does not justify the conclusion that segregation is not an adverse action. *See Faircloth*, 2014 WL 4466663, at *8.

[11] There appears to be a genuine issue of material fact here. Nevertheless, the Court construes this fact in favor of Plaintiff solely for purposes of adjudicating the Motion. *See Ellis*, 779 F.3d at 1186; *compare Decl. of Terrones* [#63-10] ¶ 2 *with Am. Compl.* [#44] ¶¶ 30-38.

actions, i.e., [Plaintiff] must show that 'but for' a desire to retaliate, [Defendant] would not have acted as [he] did."   *Magluta*, 2009 WL 1504749, at *3 (citations omitted). Importantly, in the briefing on the Motions, Plaintiff himself appears to take the position that his request for a staff paralegal was either not the reason he was placed in segregation or had minimal impact on the decision.   *See, e.g.*, *Motion* [#59] at 3 ("Defendant Palomino UN-disputably order I/plaintiff Fogle to the Segregation unit by his own admission due to the September 2, 2012 Letter, expressing nothing more than "Freedom of Speech.").   Plaintiff's arguments in the briefing focus almost exclusively on his removal from population *based on the letter*.   *See Motion* [#59]; *Response* [#66]; *Reply* [#65].   The most significant discussion he presents regarding the staff paralegal request is as follows:

> Defendant Palomino retaliated against I/Plaintiff Fogle in one way or another because he felt offended .  Undisputed facts are, CCA/CCCF does not have a <u>staff</u> paralegal employed to assist inmates [to] access the courts through the CCCF law library. . . .  Either way, lack of legal assistance to a staff paralegal or a non-threatening letter or comment . . . are nothing more than "Freedom of Speech"—"Freedom of Expression . . . ."

*Reply* [#65] at 6-7.  But Plaintiff's conclusory statement that Defendant was "offended" and his adamant insistence that his request was protected speech miss the mark.  Plaintiff is required to present facts which show that the adverse action taken against him was substantially motivated by his speech.  He has plainly failed to do so.

Thus, in light of the undisputed evidence regarding Plaintiff's placement in segregation based on the letter, and the lack of evidence that Plaintiff's request for a staff paralegal substantially motivated Defendant's actions, the Court cannot find that, but for a desire to retaliate against Plaintiff because of his request for a staff paralegal,

Defendant would not have acted as he did.

The Court concludes that Plaintiff has failed to provide specific facts showing retaliation because of the exercise of his constitutional rights, and this portion of Claim Two and Claim Four fails.  *See Peterson*, 149 F.3d at 1144.

### c.    Access to Legal Materials While in Segregation

Finally, the Court addresses Plaintiff's Claim Three to the extent Plaintiff asserts he was prevented from accessing his legal materials during the two weeks when he was in segregation.  As discussed above, to assert a claim for denial of access to the courts, a plaintiff must show that the lack of legal resources "resulted in actual injury by frustrating, impeding, or hindering his efforts to pursue a legal claim."  *Simkins v. Bruce*, 406 F.3d 1239, 1243 (10th Cir. 2005).  Plaintiff refers to two lawsuits he was pursuing at the time of his segregation: Civil Action No. 11-cv-03253-CMA-MEH in federal court in the District of Colorado, and Civil Action No. 11-cv-8284 in state court in the Denver District Court.  *Am. Compl.* [#44] ¶ 54.  However, Plaintiff has failed to provide evidence of actual injury in either lawsuit due to his time in segregation from approximately September 14 through September 28, 2012.  *Id.* ¶ 80.

Regarding the federal case, a Recommendation regarding dispositive motions was issued by a Magistrate Judge on September 18, 2012.  *See* No. 11-cv-03253-CMA-MEH [#82].  The Recommendation indicated that the parties had fourteen days in which to file objections to the Recommendation, thus the deadline for Plaintiff to mail his objections was, at the earliest, October 2, 2012 (without taking into account the additional time permitted for service and mailing).  Plaintiff was returned to general population on September 28, 2012.  *Am. Compl.* [#44] ¶ 80.  Assuming Plaintiff did not have enough

time to research and write his objections, Plaintiff does not explain why he did not seek an extension of time from the Court in which to do so. Plaintiff ultimately filed an Objection with the Court on October 15, 2012, by way of a document dated October 11, 2012. *See* No. 11-cv-03253-CMA-MEH [#84]. In the Objection he did not ask for more time or mention his time in segregation. The District Judge adopted the Recommendation to dismiss Plaintiff's lawsuit not only because the Objection was untimely, but because Plaintiff failed to provide specific objections to the Recommendation. *See* No. 11-cv-03253-CMA-MEH [#85]. Thus, the Recommendation was adopted on multiple grounds.[12] In short, Plaintiff has not demonstrated that, to the extent he may have been denied access to legal materials in segregation, he was subject to actual injury with respect to this lawsuit. *See also Depo. of Pl.* [#63-3] at 65-67.

Regarding the state case, the only pleading filed on September 13, 2012 (the only date referred to by Plaintiff), was an Order from the presiding judge limiting discovery on a particular issue and granting the parties twenty-eight days in which to conduct discovery and file briefs with supporting evidence. *Register of Actions* [#63-18] at 2. Plaintiff does not explain how he was "hindered" in connection with this Order. *Am. Compl.* [#44] ¶ 54. He states that he was unable to obtain a Certificate of Review, but he does not provide any connection between this issue, his time in segregation, and the ultimate resolution of his case.[13] He has therefore failed to provide evidence of actual injury, and in the

---

[12] Plaintiff filed a Motion for Reconsideration that was also denied by the District Judge because Plaintiff failed to demonstrate that the Court had subject matter jurisdiction over his lawsuit. *See* No. 11-cv-03253-CMA-MEH [#87, #88].

[13] The Court notes that in connection with this argument, Defendant cites to portions of Plaintiff's deposition that have not been provided to the Court. *See, e.g., Motion* [#63] at 17-18 (citing *Depo. of Pl.* [#63-3] at 69-71). Although the failure to provide this testimony prevents the

absence of a genuine issue of material fact, Claim Three must fail.

Accordingly, summary judgment shall enter in favor of Defendant on Claims Two, Three, and Four under the First Amendment.

### 2.    Fourteenth Amendment Due Process

Claim One and Claim Five are based on the alleged violation of Plaintiff's due process rights under the Fourteenth Amendment. *See generally Am. Compl.* [#44] ¶¶ 88-104, 138-140. Claim One is based on Defendant's alleged failure to restore Plaintiff to his law clerk job and the accompanying programs and privileges associated with that job. The only additional privilege of which Plaintiff asserts he was temporarily deprived was his two-man cell assignment. *Depo. of Pl.* [#63-3] at 99-100. Claim Five is based on Defendant's alleged order to remove Plaintiff from general population into segregation.

### a.    Claim One

Defendant asserts that Plaintiff failed to exhaust his administrative remedies with respect to this claim. Under the Prison Litigation Reform Act ("PLRA"), an inmate must first exhaust administrative remedies before filing suit. *Porter v. Nussle*, 534 U.S. 516, 520 (2002) ("1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences."); *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."); *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). Specifically, the exhaustion provision states: "No action shall be brought

---

Court from considering Defendant's argument, the fact remains that Plaintiff has failed to provide evidence that he sustained actual injury in the litigation of his state court case as a result of the alleged deprivation of legal materials during his two-week stay in segregation.

with respect to prison conditions under [42 U.S.C. § 1983] of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  In order to "properly exhaust" available administrative remedies, inmates must fully comply with the applicable prison procedural requirements.  *Jones*, 549 U.S. at 218 (citing *Woodford*, 548 U.S. at 88); *Jernigan v. Stuchell*, 304 F.3d 1030,1032 (10th Cir. 2002) (citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)).  The burden is on the defendant to assert failure to exhaust in a dispositive motion.  *See Jones*, 549 U.S. 199 at 216.

If the defendant establishes that the plaintiff failed to exhaust the prison's administrative remedies, the plaintiff must show that the remedies were unavailable to him.  *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011).  Courts have found that remedies are unavailable when inmates are intimidated by prison officials, *id.*, and when "prison officials erroneously inform an inmate that the remedy does not exist or inaccurately describe the steps he needs to take to pursue it."  *Stine v. United States Fed. Bureau of Prisons*, 508 F. App'x 727, 730-31 (10th Cir. 2013) (citations omitted) (internal quotation marks omitted).  The prison facility is tasked with the responsibility of establishing grievance procedures.  *Jones*, 549 U.S. at 218 ("[I]t is the prison's requirements, not the PLRA, that define the boundaries of proper exhaustion.").

Defendant asserts that Plaintiff has not submitted any grievances with respect to either his law clerk job or his initial assignment to a four-man cell.  *Motion* [#63] at 6. Plaintiff affirmed in his deposition that he did not file any grievances with respect to his law clerk job or his assignment to a four-man cell.  *Depo. of Pl.* [#63-3] at 100, 117.  Plaintiff

does not direct the Court's attention to any evidence to the contrary in his Response [#66]. Thus, in the absence of any evidence creating a genuine issue of material fact regarding exhaustion, the Court finds that Plaintiff failed to exhaust his administrative remedies with respect to his law clerk job and placement in a four-man cell.

Accordingly, summary judgment shall enter in favor of Defendant with respect to this claim.

### b.    Claim Five

Claim Five is based on Defendant's alleged order to remove Plaintiff from general population and to place him in segregation without providing notice or allowing him to call witnesses and present evidence at a hearing. *Am. Compl.* [#44] ¶¶ 39, 138-40.

In *Suarez v. Palomino*, 590 F. App'x 733 (10th Cir. 2014), the Tenth Circuit Court of Appeals recently addressed a case remarkably similar to the facts at issue here. The plaintiff in that case, James Suarez Jr. ("Suarez") was also a prisoner at CCCF and had also sued the Defendant named here. *Suarez*, 590 F. App'x at 734. Defendant placed Mr. Suarez in segregation for nine days while Defendant investigated his potential involvement with contraband that was entering the prison. *Id.* Mr. Suarez was placed in segregation only after he had requested a prisoner complaint form from the prison librarian based on the allegedly false accusation and abusive line of questioning he had endured. *Id.*

The Tenth Circuit held that Mr. Suarez's due process claim failed because he could not as a matter of law demonstrate that his nine days in segregation implicated a constitutionally protected liberty interest. *Id.* at 735. "A protected liberty interest only arises from a transfer to harsher conditions of confinement when an inmate faces an

'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'"

*Id.* (quoting *Rezaq v. Nalley*, 677 F.3d 1001, 1011 (10th Cir. 2012) (quoting *Wilkinson v.*

*Austin*, 545 U.S. 209, 221 (2005)) (internal quotation marks omitted)).   The Circuit

reiterated four non-dispositive factors considered when determining whether a prisoner's

segregation imposes such a hardship: "whether (1) the segregation relates to and furthers

a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of

placement are extreme; (3) the placement increases the duration of confinement . . . ; and

(4) the placement is indeterminate." *Suarez*, 590 F. App'x at 735 (quoting *Estate of*

*DiMarco v. Wyo. Dep't of Corr.*, 473 F.3d 1334, 1342 (10th Cir. 2007)).

Applying those factors, the Tenth Circuit held that there was no basis for

concluding that Mr. Suarez faced an atypical and significant hardship.  *Id.*  "Segregation

pending an investigation into alleged criminal activity by an inmate can serve a legitimate

penological interest." *Id.* (citing *Jordan v. Fed. Bureau of Prisons*, 191 F. App'x 639, 653

& n.11 (10th Cir. 2006)).   Mr. Suarez argued (as does Plaintiff here) that Defendant could

have conducted his investigation while Mr. Suarez remained in general population.

*Suarez*, 590 F. App'x at 735.   The Circuit first noted in response that "we are mindful [in

making this assessment] that nondisciplinary administrative segregation 'is the sort of

confinement that inmates should reasonably anticipate receiving at some point in their

incarceration.'" *Id.* at 735 n.5 (citing *Rezaq*, 677 F.3d at 1012 (quoting *Hewitt v. Helms*,

459 U.S. 460, 468 (1983), *overruled on other grounds by Sandin v. Conner*, 515 U.S. 472,

479-83 (1995))).   The Circuit then stated that "[o]ur role in making this assessment,

however, is not to second-guess or micro-manage the judgments of prison officials." *Id.*

at 736 (citing *Rezaq*, 677 F.3d at 1014).   "Accordingly, we look only for a reasonable

relationship between isolation and a penological interest." *Id.*

The Court further concluded that the remaining factors also militated against finding that Mr. Suarez had a liberty interest in having a hearing before his removal from general population. *Suarez*, 590 F. App'x at 736. Mr. Suarez called his segregation "the most harsh condition of confinement" and complained that he was deprived of radio, television, and personal items, which the Tenth Circuit stated "hardly amounts to extreme conditions." *Id.* In addition, there was no indication that the segregation increased the duration of Mr. Suarez's confinement or that the duration of his segregation was indeterminate, as he only spent nine days there before being returned to general population. *Id.* Based on these factors, the Tenth Circuit held there was no liberty interest at stake, and therefore declined to address the issue of whether Mr. Suarez received inadequate process prior to his segregation. *Id.*

Plaintiff attempts to distinguish *Suarez* by arguing that Mr. Suarez was not ordered to segregation because he was attempting to exercise a constitutionally protected right; that Mr. Suarez had prior disciplinary convictions and was the subject of prior investigations, unlike Plaintiff; that Mr. Suarez was not confined to segregation for the maximum time allowable in non-disciplinary segregation; that removal from population is allegedly reserved for "the most extreme of cases during an emergency of the threat of life to a staff, inmate, or the facility safety and security" [sic]; and that Defendant could have completed the investigation while Plaintiff remained in general population. *See Response* [#66] at 5-9; *Reply* [#69] at 9-10.

Plaintiff's attempts to distinguish *Suarez* are unpersuasive. The material facts of *Suarez* are effectively indistinguishable from the material facts of Plaintiff's case. First,

Mr. Suarez indeed argued that he was sent to segregation for engaging in protected activity (seeking to file a complaint), but the Tenth Circuit's analysis makes clear that this assertion did not impact Mr. Suarez's due process rights with respect to whether he had a liberty interest in his removal from population to segregation. *Suarez*, 590 F. App'x at 735-36.   Second, Plaintiff provides no authority, and the Court is aware of none, demonstrating that an inmate's lack of prior bad behavior impacts the legal analysis regarding a liberty interest in remaining in general population.   Third, Plaintiff provides no authority, and the Court is aware of none, that distinguishes between the nine days Mr. Suarez spent in segregation, in which no liberty interest was found, and the additional period of approximately five days which Plaintiff spent in segregation.   Fourth, Plaintiff neither provides authority to support his assertion that removal from population during investigations is only reserved for the most extreme cases, nor does he describe how this assertion impacts his due process claim.   Finally, Plaintiff's argument that he could have been investigated while remaining in general population was rejected by the Tenth Circuit in *Suarez* under similar circumstances.   590 F. App'x at 735.   The Court therefore finds that Plaintiff has failed to distinguish *Suarez* from this case, and that Plaintiff has therefore failed to demonstrate as a matter of law that he had a liberty interest in his removal from population and placement in segregation for approximately two weeks.

Accordingly, summary judgment shall enter in favor of Defendant on this claim.

### 3.     Fourteenth Amendment Equal Protection

Plaintiff asserts a violation of his equal protection rights for allegedly being singled out by Defendant for removal from general population and placement in segregation. *Am. Compl.* [#44] ¶¶ 45, 141-42.   Plaintiff provides no case law in support of his contention.

He does not describe himself as a member of any suspect classification and instead appears to be making a claim based on a class of one. *See id.*; *Motion* [#63] at 21-22. Plaintiff's Response [#66] does not provide any further clarification of his claim.

Under the Equal Protection Clause, "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. XIV § 1. The Tenth Circuit affords substantial deference to prison officials when inmates who bring an equal protection claim do not allege discrimination based on a suspect classification such as race, national origin, or gender. *See Haik v. Salt Lake City Corp.*, No. 13-4050, 2014 WL 2523735, at *8 (10th Cir. Jun. 5, 2014); *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1218 (10th Cir. 2011); *Gwin v. Awmiller*, 354 F.3d 1211, 1228 (10th Cir. 2004). A plaintiff who does not allege a suspect classification may assert an equal protection claim as a class of one. *Haik*, 2014 WL 2523735, at *8. A plaintiff who asserts a class-of-one claim "must first establish that others, 'similarly situated in every material respect' were treated differently." *Kan. Penn Gaming, LLC*, 656 F.3d at 1216 (citing *Jicarilla Apache Nation v. Rio Ariba Cnty.*, 440 F.3d 1202, 1210 (10th Cir. 2006)); *cf. City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Poe*, 457 U.S. 202, 216 (1982)) ("The Equal Protection Clause of the Fourteenth Amendment commands that no state shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike.").

Defendant argues that Plaintiff has failed to "identify any other inmate who was similarly situated in every material respect but was treated differently . . . ." *Motion* [#63] at 22. Indeed, although Plaintiff states that he was singled out, he does not provide the name of or any evidence regarding any other individual who may have been similarly

situated. In the absence of this evidence, there is no genuine issue of material fact and

his equal protection claim based on a class of one must fail. *See Kan. Penn Gaming,*

*LLC*, 656 F.3d at 1216.

Accordingly, summary judgment shall enter in favor of Defendant on this claim.

### 4. Eighth Amendment Cruel and Unusual Punishment

Plaintiff's Claim Seven is titled as an equal protection Fourteenth Amendment claim

in the Amended Complaint. *See* [#44] ¶ 143. Defendant observes:

> The opening paragraph of Plaintiff's Seventh Claim is identical to the
> opening paragraph of the Sixth Claim and purports to state an equal
> protection claim. However, the only other paragraph within the Seventh
> Claim asserts [Defendant] caused him "hardship" by ordering he not receive
> outdoor exercise. Based on this language, as well as the same language
> from the original Prisoner Complaint, it appears Plaintiff may be attempting
> an Eighth Amendment claim for cruel and unusual punishment, as opposed
> to a duplicative equal protection claim. If in fact this was intended to be
> another equal protection claim, Plaintiff again fails to allege any similarly
> situated individual was treated differently than he was.

*Motion* [#63] at 22 (internal citations omitted). Plaintiff's vague response does not appear

to disagree with this assessment. *See Response* [#66] at 9. Rather, he only appears to

disagree with Defendant's assessment that judgment should enter in Defendant's favor

on this claim. *See id.* The Court therefore agrees with Defendant's construction of this

claim as one for cruel and unusual punishment. However, to the extent Plaintiff intended

to assert a second equal protection claim, the Court finds that this claim suffers from the

same defect as Claim Six discussed above, i.e., Plaintiff has failed to provide evidence

of any similarly situated individual who was treated differently from him.

To the extent Plaintiff intended to assert an Eighth Amendment claim, Plaintiff has

failed to provide authority that the failure to provide outdoor exercise for a period of

approximately fourteen days constitutes cruel and unusual punishment. *See Am. Compl.*

[#44] ¶ 144.  Plaintiff first cites to *Searles v. Van Bebber*, 251 F.3d 869, 879-81 (10th Cir. 2001).  *See Am. Compl.* [#44] ¶ 144.  However, the issue in that case was whether prison officials violated an inmate's First Amendment right to free exercise of religion when they denied approval of a kosher diet for him, and Plaintiff provides no explanation of how that case is pertinent to his claim.

Plaintiff also cites to *Fogle v. Pierson*, 435 F.3d 1252, 1260 (10th Cir. 2006), a case in which he was also the plaintiff.  In that case, the Tenth Circuit Court of Appeals held that Plaintiff arguably stated a claim for cruel and unusual punishment based on his allegations that he was denied all outdoor exercise for the three years he was in administrative segregation.  However, Plaintiff's present claim is distinguishable from *Fogle* based on the length of time he was denied outdoor exercise.  Here, Plaintiff was only denied outside exercise for approximately two weeks, nowhere close to the three years that were at issue in *Fogle*.

Rather, absent unusual circumstances not present here, a viable cruel and unusual punishment claim based on lack of outdoor exercise must be based on a much longer period than Plaintiff's fourteen-day stay in segregation.  For example, in *Ajaj v. United States*, 293 F. App'x 575, 584 (10th Cir. 2008), the Tenth Circuit held that the deprivation of outdoor recreation for the plaintiff's first year at the Administrative Maximum United States Penitentiary in Florence, Colorado ("ADX") was insufficiently serious to state an Eighth Amendment claim.  In *Saleh v. United States*, No. 09-cv-02563-PAB-KLM, 2011 WL 2682728, at *5 (D. Colo. July 8, 2011), the Court held that denial of outdoor exercise for ninety days did not implicate the Eighth Amendment.  In *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988), the Seventh Circuit Court of Appeals held that denial of

exercise for twenty-eight days was insufficient to constitute cruel and unusual punishment. Plaintiff's fourteen-days without outdoor exercise falls well within the limits suggested by these cases.

Accordingly, summary judgment shall enter in favor of Defendant on this claim.

### IV. Conclusion

For the foregoing reasons, Plaintiff's Motion [#59] is **DENIED** and Defendant's **Motion** [#63] is **GRANTED**.  Judgment shall enter in favor of Defendant on all claims.

Dated September 18, 2015, at Denver, Colorado.

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge